### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

_____
                                        )
**DOUGLAS J. BACHE,**                   )
                                        )
       **Plaintiff,**                )
                                        )          **Civil Action No.**
    **v.**                              )          **21-11187-FDS**
                                        )
**TOWN OF BOXBOROUGH and**              )
**PHILIP GATH,**                        )
                                        )
     **Defendants.**             )
_____)


### MEMORANDUM AND ORDER ON
### <u>DEFENDANTS' MOTION TO DISMISS</u>

**SAYLOR, C.J.**

      This is a case concerning the enforcement of a court order by a police officer in the course of a domestic dispute.

      According to the complaint, plaintiff Douglas Bache lived with his former girlfriend Lisa Oakes in Boxborough, Massachusetts.  Their relationship deteriorated to the point that Oakes was required to leave the property.  The Northeast Housing Court issued a court order outlining when Oakes could return to the property to retrieve her belongings.  The order permitted Oakes to return on February 3, 2019, to retrieve "small items, clothes, and shoes."  A stipulation agreement between the parties, adopted by the court, required that an officer from the Boxborough Police Department be present while Oakes gathered her belongings from the property.

      The present dispute arises out of an alleged failure to enforce that order.  According to Bache—and notwithstanding the actual language of the order—Oakes was only permitted to take

her clothes and shoes from the premises.  Philip Gath was the Boxborough police officer assigned to be present during that process.  Gath permitted Oakes to take belongings other than clothes and shoes, such as a toaster oven, a Crock Pot, an alarm clock, and other household items.  According to Bache, by doing so Gath failed to enforce the order in violation of his rights under federal and state law.

The complaint asserts, among other things, claims for violation of the Fifth Amendment, the Massachusetts Civil Rights Act, negligence, and breach of fiduciary duty.  Defendants have moved to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  For the reasons set forth below, the motion will be granted.

## I.   **Background**

### A.   **Factual Background**

Douglas Bache is a resident of Boxborough, Massachusetts.  (Compl. ¶ 4).  He and his former girlfriend, Lisa Oakes, lived together at 41 Spencer Road, Apt. 18G, in Boxborough.  (*Id.* ¶¶ 4, 5).

According to the complaint, when the relationship between the couple ended, Bache asked that she move out, but she refused.  (*Id.* ¶¶ 9, 10).  Bache hired attorney Devin Hoffman to assist him with evicting Oakes from the property.  (*Id.* ¶ 11).

On January 14, 2019, a hearing on the matter was held in the Commonwealth of Massachusetts Northeast Housing Court.  (*Id.* ¶ 20).  The parties entered into a stipulation agreement stating that Oakes could retrieve her belongings from the apartment on two separate occasions.  (*Id.* ¶ 23).  The reason for the two separate dates was that if the agreement was breached by Oakes, Bache could request that the court prevent her from returning to the apartment on the second scheduled occasion.  (*Id.* ¶ 25).  The stipulation agreement also required that an officer from the Boxborough Police Department be present at the apartment while Oakes

retrieved her belongings.  (*Id.* ¶ 26).  The stipulation agreement was signed by the parties, endorsed by the court, and converted into a court order.  (*Id.* ¶ 27).

According to the order, Oakes could retrieve "small items, clothes, and shoes" on February 3, 2019, between 12 p.m. and 2:30 p.m.  (Dkt. No. 8, Ex. 1).[1]  The complaint rephrases that order, and alleges that she could "retrieve small items, namely clothing and shoes."  (Compl. ¶ 29).

On February 3, 2019, Oakes showed up with Boxborough police officer Philip Gath to gather her things at the apartment.  (*Id*. ¶ 32).  Oakes allegedly began taking some of Bache's personal property in addition to her belongings.  (*Id.* ¶ 33).  According to the complaint, she allegedly took Bache's wedding ring, an electric toothbrush, a toaster oven, a Crock Pot, an alarm clock, slippers, two lamps, a frying pan, picture frames, and other household items.  (*Id.* ¶ 46).  Bache notified Gath of the limitations provided in the court order and explained that Oakes was removing property that was not hers.  (*Id.* ¶ 34).  Bache then reached out to Attorney Hoffman for assistance.  (*Id.* ¶ 37).  Attorney Hoffman told Gath that only clothes and shoes belonging to Oakes should be taken from the apartment.  (*Id.* ¶ 39).  Gath stated that "he was enforcing a Court Order and therefore nothing further could be done," but that if Bache "had a problem with anything that Ms. Oakes had taken, or did, that day Mr. Bache could sue her in Court."  (*Id.* ¶¶ 42, 48).

### B.    Procedural Background

On June 4, 2021, Bache filed a complaint in state court.  (Dkt. No. 1, Notice of Removal, Ex. 2, Compl.).  Defendants removed the case to this Court.  (Dkt. No. 1, Notice of Removal).

---

[1] While the court order is not attached to the complaint, the court may properly consider it at this stage because the complaint's "factual allegations are expressly linked to" and "dependent upon" it.  *See Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (quoting *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 16-17 (1st Cir. 1998)).

The complaint alleges negligence (Count 1); a violation of the Massachusetts Civil Rights Act (Count 2); a violation of the Fifth Amendment (Count 3); intentional infliction of emotional distress (Count 4);  breach of fiduciary duty (Count 5); conversion (Count 6); negligent supervision and training (Count 7); and negligent infliction of emotional distress (Count 8).

Defendants have moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.   Standard of Review

To survive a motion to dismiss, the complaint must state a claim that is plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  When determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences.  *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

## III.   Analysis

### A.   Count 3:  Violation of the Fifth Amendment

As to Count 3, Bache alleges that (1) he was deprived of life, liberty, or property without

4

due process of the law, and (2) his private property was taken for public use without just compensation.  This Court will address each allegation separately.

        1.      **Due Process**

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving a person of life, liberty, or property without due process of law.  U.S. Const. amend. XIV, § 1. Allegations of negligence are insufficient to demonstrate a deprivation of due process.  *See Daniels v. William*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).  In *Daniels*, the Supreme Court observed that

> the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property. . . . Not only does the word "deprive" in the Due Process Clause connote more than a negligent act, but we should not open the federal courts to lawsuits where there has been no affirmative abuse of power.

474 U.S. at 328, 330 (emphasis in original).

Furthermore,

> nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors.  The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security.

*DeShaney v. Winnebago Cty. Dep't of Soc. Services*, 489 U.S. 189, 195 (1989).  Thus, in *Town of Castle Rock v. Gonzalez*, 545 U.S. 748 (2005), a woman obtained a restraining order limiting contact between her estranged husband and their three daughters.  One night, she discovered that her daughters were missing and immediately informed the police.  The police refused to help her. Later that night, her husband killed their three daughters.  She filed suit, alleging that the failure of the police to enforce the restraining order violated her rights under the Due Process Clause. The Supreme Court found that the police have discretion as to how to enforce the law and that the government generally has no duty to provide protection from private inflicted harms.  *Id.* at

761-64; *see also* ERWIN CHEMERINSKY, CONSTITUTIONAL LAW PRINCIPLES AND POLICIES 578 (5th ed. 2015) ("Only if the government literally creates the danger or a person is in government custody, is there any constitutional duty for the government to provide protection.  State and local governments may create duties and remedies under their law, but they do not exist under the Constitution.").

The complaint here fails to allege that any actions taken by Gath or the Town of Boxborough amounted to anything more than negligence.  Furthermore, Oakes, a private actor, is responsible for any harm inflicted upon Bache.  Accordingly, to the extent that Count 3 alleges a violation of due process, it will be dismissed.

## 2.      <u>Takings Claim</u>

The Fifth Amendment prohibits the government from taking private property for public use without just compensation.  U.S. Const. amend. V; *Carney v. Town of Framingham*, 2012 WL 1552964 at *2 (D. Mass. 2012).  "The Takings Clause of the Fifth Amendment [is] applicable to the States through the Fourteenth Amendment."  *Carney*, 2012 WL 1552964 at *2 (quoting *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001)).  There are two basic ways of finding a taking:  a possessory taking and a regulatory taking.  CHEMERINSKY, *supra,* at 668-69; *see also Loretta v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982).  Because nothing in the facts here establishes that any government regulation is at issue, the only form of a taking that is potentially relevant is whether a possessory taking has occurred.

A possessory taking occurs when the government confiscates or physically occupies property.  *Loretta*, 458 U.S. at 420, 431, 435.  Here, the complaint does not allege that the Town or Gath confiscated any of Bache's property or physically occupied his property.  Instead, it alleges that Oakes improperly took his property and that Gath did not intervene to stop her.  Such allegations are insufficient to allege a taking within the meaning of the Fifth Amendment.

Accordingly, the Court will grant the motion to dismiss as to Count 3.

**B.      Count 2:  Violation of Massachusetts Civil Rights Act**

The Massachusetts Civil Rights Act ("MCRA") provides a cause of action for individuals whose rights under the Constitution and laws of the United States or the Commonwealth have been interfered with, or attempted to be interfered with, by threats, intimidation, or coercion. Mass. Gen. Laws ch. 12, §§ 11H and 11I.

The MCRA protects people from interference with the exercise of their rights under federal or state law.  *Dwan v. City of Boston*, 329 F.3d 275, 282 (1st Cir. 2003).  The MCRA claim here is dependent on survival of the Fifth Amendment claim.  *See id.* (citing *Sena v. Commonwealth*, 417 Mass. 250, 261-62 (1994)).  And because the Fifth Amendment claim fails, this claim fails as well.  *Id.* (holding that plaintiff's MCRA claim is dependent on their Fifth Amendment claim and since their Fifth Amendment claims fails, their MCRA claim must also fail).[2]  Furthermore, and in any event, the complaint does not allege that any constitutional right was interfered with by threats, intimidation, or coercion.

Accordingly, the Court will grant the motion to dismiss as to Count 2.

**C.      Counts 4 and 6:  Intentional Tort Claims**

It is unclear whether plaintiff is attempting to assert claims against Gath in his official and individual capacities; the Court will therefore address both possibilities.

---

[2] Moreover, the complaint does not allege facts that demonstrate that Bache's rights were interfered with due to intimidation, threats, or coercion by Gath.  The complaint alleges merely that Bache's rights were interfered with due to the intimidation and coercion of Gath "by his position as a Boxborough Police Officer."  (Compl. ¶ 62). Gath's presence at the scene, without more, does not support a MCRA claim; the statute requires threats, intimidation, or coercion *in addition to* the violation of rights.  *See Santiago v. Keyes*, 890 F. Supp. 2d 149, 155 (D. Mass. 2012) ("the constitutional violation itself cannot also serve as the prerequisite threats, intimidation, or coercion under the MCRA") (citations omitted).  Thus, even if defendants' alleged lack of enforcement of the court order violated Bache's rights, that itself is not enough for a MCRA claim.  And the complaint does not otherwise allege facts that establish any threats, intimidation, or coercion.

The Massachusetts Tort Claims Act ("MTCA") bars "any claim" against the Commonwealth, its agencies, and municipalities "arising out of an intentional tort" (including, but not limited to, intentional mental distress, malicious prosecution, and malicious abuse of process).  Mass. Gen. Laws ch. 258, § 10(c); *see also Freeman v. Town of Hudson*, 849 F. Supp. 2d 138, 156-57 (D. Mass. 2012), *aff'd*, 714 F.3d 29 (1st Cir. 2013).  Claims against a police officer in his official capacity are treated as claims against the municipality itself.  *See Damon v. Hukowicz*, 964 F. Supp. 2d 120, 136 (D. Mass. 2013) (noting that claims against police officers in their official capacities are claims against the police department itself and thus barred by the MTCA) (citing *McMillian v. Monroe County*, 520 U.S. 781, 785 n.2 (1997)).

Counts 4 and 6 allege intentional torts (specifically, intentional infliction of emotional distress and conversion, respectively).  Under the MTCA, such claims are barred against the Town and Gath (acting in his official capacity), and will therefore be dismissed.

The MTCA does not apply to claims of intentional tort against Gath acting in his individual capacity.  *See Nelson v. Salem State Coll.*, 446 Mass. 525, 537-38 (2006) (discussing how § 10(c) does not shield a public official sued in his or her individual capacity for an intentional tort).  Common-law immunity, however, is nonetheless applicable.  *Id.*  Under Massachusetts common law, government employees exercising judgment and discretion as public officials and in good faith are immune from suit.  *See Najas Realty, LLC v. Seekonk Water Dist.*, 821 F.3d 134, 145-46 (1st Cir. 2016) (affirming dismissal of intentional tort claims and explaining that "a public official, exercising judgment and discretion, is not liable for negligence or other error in the making of an official decision if the official acted in good faith, without malice, and without corruption") (citations omitted).

Here, the complaint does not allege that Gath acted outside of his official capacity, as a

police officer for the Town of Boxborough, while enforcing the court order.  And it fails to allege that Gath acted in bad faith or with malice.  At most, it alleges that Gath was told—by Bache and his lawyer—that Oakes was exceeding the scope of the court order.  (Compl. ¶¶ 34, 38, 39, 41).  But that does not even appear to have been true, as the court order permitted her to retrieve "small items."

Thus, "[e]ven [with] the most liberal reading of the facts alleged," the complaint does not allege facts sufficient to overcome the presumption that Gath was acting in good faith in carrying out his official duties.  *See Najas Realty*, 821 F.3d at 146 (noting that "[t]here is every presumption in favor of the honesty and sufficiency of the motives actuating public officers in actions ostensibly taken for the general welfare") (quoting *S. Bos. Betterment Trust Corp. v. Bos. Redev. Auth.*, 438 Mass. 57, 69) (2002)).  The complaint therefore fails to state any claim of intentional tort against Gath in his individual capacity.

Accordingly, the Court will grant the motion to dismiss as to Counts 4 and 6.

D.    <u>Counts 1 and 8:  Negligence Claims</u>

The MTCA immunizes public employees from personal liability for negligence acts or omissions committed while acting within the scope of their employment.  *See* Mass. Gen. Laws ch. 258, § 2 (stating that no public employee "shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment"); *see also Petricca v. City of Gardner*, 194 F. Supp. 2d 1, 4 (D. Mass. 2002) ("Under the MTCA, public employees are immune from personal liability for negligence, wrongful acts or omissions while acting within the scope of their employment.").

As discussed, the complaint does not allege that Gath was acting outside of his scope of employment when he was enforcing the court order.  Therefore, the MTCA bars personal liability for Gath's alleged negligence.

Similarly, at common law, a public official exercising judgment and discretion is not liable for negligence in the making of an official decision, if the official acted in good faith and without malice or corruption.  Discretionary functions include "acts of subordinates in carrying out the operations of government in accordance with official directions."  *Duarte v. Healy*, 405 Mass. 43, 51 (1989) (quoting *United States v. Varig Airlines*, 467 U.S. 797, 811 (1984)).  For example, "decisions of law enforcement officers regarding whether, when, how, and whom to investigate, and whether and when to seek warrants for arrest" are discretionary functions.  *Sena*, 417 Mass. at 256-57.

Here, Gath was interpreting and enforcing a court order that allowed Oakes to remove certain items of property from the premises.  That is clearly a discretionary function.  *See Duarte*, 405 Mass. at 50.  Furthermore, nothing in the complaint states or even suggests that Gath acted in bad faith, or with malice or corruption.  Therefore, the claim of negligence is barred by common-law immunity.

As to the claims against the Town, § 10(b) of the MTCA bars claims against municipalities "based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of the public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused."  Mass. Gen. Laws ch. 258, § 10(b).  The complaint alleges that the Town is liable because of Gath's alleged negligence in enforcing the court order.  Again, however, Gath's actions in interpreting and enforcing the court order were discretionary functions undertaken in the exercise of his employment.  The claims against the Town are therefore barred by section 10(b).

Accordingly, the Court will grant the motion to dismiss as to Counts 1 and 8.

**E.**     **Count 7:  Negligent Supervision and Training**

Count 7 alleges that the Town negligently supervised and trained Gath in the exercise of

his duties.  Section 10(b) of the MTCA bars claims against municipalities based upon the exercise or performance of a discretionary function by a public employer.  Mass. Gen. Laws ch. 258, § 10(b).  The threshold issue as to this claim, therefore, is whether Boxborough's supervision and training of its officers concerning the enforcement of court orders is a discretionary function.

In *Harry Stoller & Co. v. Lowell*, 412 Mass. 139 (1992), the Supreme Judicial Court adopted a two-pronged inquiry for determining whether certain conduct falls within the discretionary-function exception.  "The first step . . . is to determine whether the governmental actor had any discretion at all as to what course of conduct to follow."  *Id.* at 141.  The second step is to "determine whether the discretion that the actor had is that kind of discretion for which § 10(b) provides immunity from liability."  *Id.*  "Discretionary actions and decisions that warrant immunity must be based on considerations of public policy."  *Id.* at 143.

Here, the complaint does not allege that there is a specific rule, regulation, or process that governs the training of police officers in the enforcement of court orders.  In the absence of any facts that allege otherwise, the Court assumes that the Town exercised discretion in that regard.

Next, the Court must determine whether the discretion that the Town exercised is of the type afforded immunity under § 10(b).  Decisions involving how to train police officers requires discretion and judgment involving public-policy and planning issues, including, but not limited to, allocation of resources (including money and employees), the impact of changes in the law on officer duties, and considerations of safety and public need.  "[W]hen the conduct that caused the [alleged] injury has a 'high degree of discretion and judgment . . . in weighing alternatives and making choices with respect to public policy and planning, governmental entities should remain immune from liability."  *Stoller*, 412 Mass. at 142 (quoting *Whitney v. Worcester*, 373 Mass.

208, 218 (1977)).

Nothing in the facts alleged here even suggests that the training of police officers is anything other than a discretionary function of the Town.  Therefore, the Town is immune under § 10(b) from liability for any claim based on the supervision and training of its officers pursuant to the enforcement of court orders.

Accordingly, the Court will grant the motion to dismiss as to Count 5.

### F.      Count 5:  Breach of Fiduciary Duty

Count 5 claims that Gath breached a fiduciary duty that he owed to Bache.  A claim for breach of fiduciary duty requires proof of four elements:  (1) the existence of a fiduciary duty, (2) breach of that duty, (3) damages, and (4) a causal relationship between the breach and the damages.  *Hanover Ins. Co. v. Sutton*, 46 Mass. App. Ct. 153, 164 (1999).  A fiduciary duty means the duty of "utmost good faith and loyalty." *Langway v. Rivers*, 2021 WL 5626393, at *2 (Mass. Super. Sept. 22, 2021) (quoting *Donahue v. Rodd Electrotype Co. of New England, Inc.*, 367 Mass. 578, 593, 594 (1975)).  "[T]he relationship between attorney and client, like those between trustee and beneficiary, director and corporation, guardian and ward, is fiduciary as matter of law." *Baker v. Wilmer Cutler Pickering Hale & Dorr LLP*, 91 Mass. App. Ct. 835, 842 (2017) (quoting *Markell v. Sidney B. Pfeifer Found., Inc.*, 9 Mass. App. Ct. 412, 442, (1980)).  Bache has pointed to no authority suggesting that police officers generally owe a fiduciary duty to members of the public.  And there are no facts pleaded in the complaint that plausibly suggest that Gath or the Town owed Bache a fiduciary duty of any kind, much less breached a duty.

Accordingly, the Court will grant the motion to dismiss as to Count 5.

## IV.   Conclusion

For the foregoing reasons, defendants' motion to dismiss is GRANTED.

**So Ordered.**


          F. Dennis Saylor IV
          F. Dennis Saylor IV
Dated: February 9, 2022          Chief Judge, United States District Court